Carlos T. COOPER, Jr., D.P.M. and E. Joseph Daniels, D.P.M., Appellants,

v.

FORSYTH COUNTY HOSPITAL AUTHORITY, INC.; Jack P. Barrier, Marian F. Brower, Harley P. Graves, J. Clifton Harper, Kap H. Halverson, Kenneth A. Johnson, Eugene Rossitch, G. Dee Smith, Ann Spencer, Raymond D. Thomas, Martha J. Young, William F. Folds, M.D., David Nelson, M.D., William F. Sayers, M.D. and Louis Shaffner, M.D. individually and as trustees of Forsyth County Hospital Authority; George Podgorny, M.D.; Robert Means, M.D.; Jeff B. Helms, M.D.; Frank E. Pollock, M.D.; Kenneth G. Tomberlin, M.D.; John T. Hayes, M.D.; Richard P. Rose, M.D.; Robert G. Underdal, M.D.; Isabel Bittinger, M.D.; Jerome E. Jennings, M.D.; The Medical Society of the State of North Carolina and North Carolina Orthopedic Association, Inc., Appellees,

and

Carolyn Green, individually and as a trustee of Forsyth County Hospital Authority, Defendant.

No. 85–1385.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1985.

Decided April 24, 1986.

Hamilton C. Horton, Jr. (T. Paul Hendrick, Horton, Hendrick & Kummer, Winston-Salem, N.C., on brief), for appellants.

Roddey M. Ligon, Jr. (Womble, Carlyle, Sandridge & Rice, on brief), Winston-Salem, N.C., Samuel G. Thompson (John H. Anderson, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Raleigh, N.C., on brief), George L. Little, Jr. (F. Joseph Trea-

cy, Jr., Petree, Stockton, Robinson, Vaughn, Glaze & Maready, Winston-Salem, N.C., Thomas E. Harris, Dorie Benesh Refling, Ward & Smith, P.A., New Bern, N.C., Edward J. Westbrook, Blatt & Fales, Barnwell, N.C., on brief), for appellees.

Before WIDENER, and ERVIN, Circuit Judges, and MOTZ, District Judge for the District of Maryland, sitting by designation.

ERVIN, Circuit Judge:

Doctor Carlos T. Cooper, Jr. and Doctor E. Joseph Daniels brought a private antitrust suit after being denied podiatric surgical privileges at Forsyth Memorial Hospital, alleging an anticompetitive conspiracy. They now appeal the district court's grant of summary judgment against them, 604 F.Supp. 685. Because appellants have failed to proffer sufficient evidence from which to infer a conspiracy, we affirm.

Doctors Cooper and Daniels are licensed podiatrists,[1] practicing in Winston-Salem, Forsyth County, North Carolina. Both perform foot surgery on an outpatient basis in their private offices. Some surgical procedures which podiatrists are licensed to perform, however, can be accomplished prudently only on an inpatient basis at a hospital. Accordingly, appellants applied for surgical privileges at Forsyth Memorial Hospital in April 1980.

The bylaws of the hospital restricted surgical privileges to members of the medical-dental staff which in turn was restricted to physicians and dentists, thus excluding podiatrists.[2] Rather than reject appellants' applications on that basis, however, a bylaws committee undertook hearings on whether the bylaws should be amended to admit podiatrists. Orthopedic surgeons with surgical privileges at the hospital participated in these hearings and objected to amending the bylaws. Orthopedists perform the majority of inpatient foot surgery at the hospital. In the event podiatrists were granted surgical privileges, podiatrists and orthopedists arguably would compete to perform certain surgical procedures.

In August 1980, the bylaws committee declined to recommend that the bylaws be amended. Because orthopedists on the medical-dental staff could perform the surgery that podiatrists sought to perform and because the education and training of orthopedists was deemed superior to that of podiatrists, the committee recommended that podiatrists continue to be excluded. Such an exclusion, they concluded, was consistent with the hospital's stated policy of providing the "best possible care."

Contemporaneous with the hospital's consideration of whether to amend the bylaws, the North Carolina Orthopedic Association (NCOA) held a general meeting in September 1980. Topics discussed at the meeting included the current status of podiatrists and the appropriate posture of NCOA toward podiatrists. The minutes of the meeting reflect that NCOA resolved to continue to oppose the granting of hospital surgical privileges to podiatrists based principally on their level of education and training. NCOA then communicated its position to its members, some of whom were orthopedists at the hospital.

Ultimately, the recommendation of the bylaws committee was adopted by the executive committee of the medical-dental staff and the board of trustees of the hospital in October 1980. The applications of appellants then were rejected summarily based upon the bylaws' restrictions.

In June 1981, the North Carolina General Assembly passed what is now N.C.Gen.

---

1. For North Carolina's podiatry licensing provisions, see N.C.Gen.Stat. §§ 90–202.2 to –202.14 (1985).

2. Therefore, whenever podiatrists had patients requiring inpatient surgery, the patients had to be referred to a surgeon with surgical privileges. Through their applications, appellants sought to be allowed to co-admit patients under the supervision of a physician, the method by which dentists admit patients. While podiatrists were excluded from the medical-dental staff and thus from surgical privileges, podiatrists are said to have "allied health" privileges, which are not clearly defined in the record.

Stat. § 131E–85 (Cum.Supp.1985), establishing procedures to be followed by hospitals when granting surgical privileges.[3] That statute mentioned podiatrists, for the first time, along with physicians and dentists. With renewed optimism, appellants again applied for surgical privileges at the hospital in September 1981. Although the hospital bylaws continued to exclude podiatrists, appellants' applications were considered by the executive committee and the credentials committee of the medical-dental staff and an ad hoc hearing committee, all of whom recommended denial of privileges. Subsequently the board of trustees adopted this recommendation. Appellants' applications then were denied again based on their education and training, as bearing on the quality of patient care at the hospital.

Appellants brought suit in February 1983 in the United States District Court for the Middle District of North Carolina against Forsyth County Hospital Authority, the board of trustees,[4] certain members of the medical-dental staff,[5] the Medical Society of the State of North Carolina[6] and the North Carolina Orthopedic Association.

Appellants alleged that appellees conspired, through a group boycott and a tying arrangement[7] to restrain trade in violation of § 1 of the Sherman Act. 15 U.S.C. § 1 (1982). Appellants also alleged that appellees conspired to monopolize the foot surgery market in violation of § 2 of the Sherman Act. 15 U.S.C. § 2 (1982). Finally, it was alleged that appellees violated N.C.Gen.Stat. §§ 131E–85,[8] 75–1 (1985), and 75–2 (1985)[9]. On cross motions for summary judgment, the district court granted summary judgment in favor of appellees primarily because appellants failed to proffer sufficient evidence of an anticompetitive conspiracy. This appeal followed.

Section 1 of the Sherman Act requires proof of a "contract, combination ..., or conspiracy, in restraint of trade." The essence of a § 1 claim is concerted action. *Terry's Floor Fashions, Inc. v. Burlington Industries, Inc.*, 763 F.2d 604, 610 (4th Cir.1985). The determinative question presented on this appeal is whether appellants have proffered sufficient evidence of a conspiracy among appellees to withstand summary judgment.[10]

3. N.C.Gen.Stat. § 131E–85(a) provides:
    (a) The granting or denial of privileges to practice in hospitals to physicians licensed under Chapter 90 of the General Statutes, Article 1, dentists and podiatrists and the scope and delineation of such privileges shall be determined by the governing body of the hospital. Such determinations shall be based upon the applicant's education, training, experience, demonstrated competence and ability, and judgment and character of the applicant, and the reasonable objectives and regulations of the hospital, including but not limited to appropriate utilization of hospital facilities, in which privileges are sought. Nothing in this Part shall be deemed to mandate hospitals to grant or deny to any such individuals or others privileges to practice in hospitals.
    This legislation was previously codified, in substantially the same language, at N.C.Gen. Stat. § 131–126.11A.

4. The sixteen trustee defendants were comprised of twelve lay members and four physicians.

5. Ten physicians were named, three of whom comprised the bylaws committee.

6. The Medical Society is not a party to this appeal.

7. Appellants did not pursue the tying arrangement theory on appeal.

8. *See supra* note 3. Appellants make much of North Carolina's passage of this statute. This legislation, however, has no bearing on whether appellees conspired in violation of the Sherman Act.

9. N.C.Gen.Stat. §§ 75–1 and 75–2 are North Carolina's version of §§ 1 and 2 of the Sherman Act.
    Because we find that appellants failed to proffer sufficient evidence to maintain their federal claims, their state claims were dismissed properly for want of pendent jurisdiction.

10. Section 2 of the Sherman Act makes it unlawful to monopolize, to attempt to monopolize or to conspire to monopolize. 15 U.S.C. § 2. Appellants, however, alleged only a conspiracy to monopolize. Because we find that appellants failed to proffer sufficient evidence of a conspiracy in violation of § 1 of the Sherman Act to withstand summary judgment, we accordingly find their § 2 claim similarly deficient.

Appellants have proffered no direct evidence of a conspiracy. They rely, as they may, on inferences of a conspiracy which they suggest may be drawn from circumstantial evidence. Recently, the Supreme Court, in *Monsanto Company v. Spray-Rite Service Corporation*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), established a standard for what constitutes sufficient evidence to permit the inference of a conspiracy in antitrust cases.

> The correct standard is that there must be evidence that tends to exclude the possibility of independent action.... That is, there must be direct or circumstantial evidence that reasonably tends to prove ... a conscious commitment to a common scheme designed to achieve an unlawful objective.[11]

*Monsanto*, 465 U.S. at 768, 104 S.Ct. at 1473.

Appellants' evidence of conspiracy consists primarily of contacts and communications among the appellees. It is uncontroverted that NCOA discussed podiatry at their general meeting, that the NCOA's position regarding podiatrists was communicated to its members, that orthopedists appeared before the bylaws committee and opposed the granting of surgical privileges to podiatrists, and that the bylaws committee recommended to the board of trustees that podiatrists be denied surgical privileges. Furthermore, there is some overlap between the individuals comprising the membership of NCOA and the physician-defendants in this case.

Viewing these facts, and the inferences to be drawn from them, in the light most favorable to appellants, *see Ross v. Communications Satellite Corporation*, 759 F.2d 355, 364 (4th Cir.1985), we find that this circumstantial evidence is not that which "reasonably tends to prove a conscious commitment to a common scheme" designed to restrain trade. *Monsanto*, 465 U.S. at 768, 104 S.Ct. at 1473. Nor is it evidence which "tends to exclude the possibility of independent action." *Id.* Thus, appellants' evidence is insufficient to permit the inference of a conspiracy. Indeed, the federal courts consistently have recognized that mere contacts and communications, or the mere opportunity to conspire, among antitrust defendants is insufficient evidence from which to infer an anticompetitive conspiracy in the context of the denial of hospital surgical privileges. *See Kaczanowski v. Medical Center Hospital of Vermont*, 612 F.Supp. 688, 695 (D.Vt. 1985) (podiatrists unsuccessfully challenged denial of hospital surgical privileges); *Feldman v. Jackson Memorial Hospital*, 571 F.Supp. 1000, 1007 (S.D.Fla. 1983), *aff'd*, 752 F.2d 647 (11th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 3504, 87 L.Ed.2d 635 (1985) (podiatrist unsuccessfully challenged denial of hospital surgical privileges); *Robinson v. Magovern*, 521 F.Supp. 842, 892 (W.D.Pa.1981) (thoracic surgeon unsuccessfully challenged denial of hospital surgical privileges); *cf. Kreuzer v. American Academy of Periodontology*, 735 F.2d 1479, 1488 (D.C.Cir.1984) (periodontist challenged "limited practice requirement" of peridontology association). To permit the inference of a conspiracy from appellants' evidence would cross the line "between reasonable inferences and mere speculation." *Terry's Floor Fashions*, 763 F.2d at 611.[12]

---

11. Under this standard, the Court reviewed the propriety of a directed verdict in *Monsanto*. This circuit recently has applied the *Monsanto* standard in the summary judgment context. *See Terry's Floor Fashions*, 763 F.2d at 611. While *Monsanto* and *Terry's Floor Fashions* were "dealer termination" cases, we find the *Monsanto* standard applicable in this "group boycott" case.

12. We recognize that there is some authority that the medical-dental staff of the hospital "is a combination of individual doctors and therefore that any action taken by the medical staff satisfies the 'contract, combination, or conspiracy' requirement of section 1 [of the Sherman Act]." *Weiss v. York Hospital*, 745 F.2d 786, 814 (3d Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). We question that position, but it is not necessary to resolve that issue in this case. Appellants did not allege a conspiracy among the members of the medical-dental staff.

Not only have appellants failed to proffer evidence from which a conspiracy reasonably can be inferred, appellees have tendered affidavits denying any anticompetitive conspiracy.[13] Moreover, appellees have represented that they opposed the granting of surgical privileges to appellants on quality of patient care grounds, a legitimate reason.[14]

Because appellants' evidence does not support the inference of a conspiracy, it likewise is insufficient to raise a genuine issue of whether appellees conspired in violation of the Sherman Act. Therefore, summary judgment against appellants was proper and the district court is affirmed.[15]

AFFIRMED.

MOTZ, District Judge (concurring).

Because I agree that plaintiffs did not allege a conspiracy among individual members of the medical-dental staff of the Forsyth Hospital, I concur. However, in my view Section 1 of the Sherman Act clearly prohibits members of a medical-dental staff from agreeing with one another to coerce a hospital's trustees to deny privileges to members of a competing profession for the purpose of furthering their economic self-interest. A jury could properly infer the existence of such an unlawful agreement from evidence of threats made to the trustees of mass resignations by the members of the medical-dental staff and the absence of demonstrably sound reasons relating to the quality of patient care underlying the defendants' actions.

13. These affidavits bolster our disinclination to infer a conspiracy. *See Kreuzer,* 735 F.2d at 1488.

14. That the challenged conduct of appellants is consistent with legitimate activities also weighs against inferring a conspiracy. *See Monsanto,* 465 U.S. at 762, 104 S.Ct. at 1470; *Terry's Floor Fashions,* 763 F.2d at 614; *Kruezer,* 735 F.2d at 1488. This consideration, however, must be distinguished from the affirmative defenses of "patient care motive" and "good faith." If appellants had proffered sufficient evidence to support a conspiracy, the next stage of inquiry would have considered the anticompetitive effect of appellees' conduct. In the context of the health care industry, appellees then would have had the opportunity to advance an affirmative defense of good faith or patient care motive. *See Hospital Building Company v. Trustees of Rex Hospital,* 691 F.2d 678, 686 (4th Cir.1982); *cert. denied,* 464 U.S. 890, 104 S.Ct. 231, 78 L.Ed.2d 224 (1983); *Wilk v. American Medical Association,* 719 F.2d 207, 227 (7th Cir.1983).

15. We are mindful that summary judgment generally is not favored in antitrust cases. Summary judgment, however, has not been read out of antitrust litigation. *See Terry's Floor Fashions,* 763 F.2d at 610.