NURSE MIDWIFERY
ASSOCIATES, et al.

v.

B.K. HIBBETT, M.D., et al.

No. 82–3208.

United States District Court,
M.D. Tennessee,
Nashville Division.

March 14, 1988.

---

Irwin Venick, Nashville, Tenn., W.W. McNeilly, Jr., Andrews Baer & Melkin, Nashville, Tenn., for Steven Melken.

Julia C. Morris, Vanderbilt University, Nashville, Tenn.

Charles L. Kown, Hosp. Corp. of American, Nashville, Tenn., for Southern Hills.

Ames Davis, Waller Lansden Dortch & Davis, Nashville, Tenn., for Hendersonville Comm.

William H. Baumgartner, Jr., Jack R. Bierig, Sidney & Austin, Chicago, Ill., W. Harold Bigham, Barbara J. Moss, Gullett Sanford Robinson & Martin, Nashville, Tenn., for State Vol. Mut. Ins.

Mary Francis Lyle, Bruce Weathers Dughman & Lyle, Nashville, Tenn., for plaintiff.

Robert J. Walker, R. Dale Grimes, Bass Berry & Sims, and Larry Woods, Nashville, Tenn., for Vandy.

Kevin McDonald, Jones Day Reavis & Pogue, Washington, D.C., for Southern Hills.

Ward DeWitt, Nashville, Tenn., for B.K. Hibbett.

Joseph G. Cummings, Nashville, Tenn., for Shackleford.

## MEMORANDUM

JOHN T. NIXON, District Judge.

■ The Court has received the Report and Recommendation issued by the Magistrate on July 31, 1987, concerning motions for summary judgment filed by each of the defendants in this case. Plaintiffs and certain defendants have filed written objections to the Report and Recommendation. Under Rule 72(b) of the Federal Rules of Civil Procedure, the Court must make a *de novo* determination of all matters to which the parties object. In its determination, the Court may adopt, modify, or reject any of the Magistrate's proposed findings or recommendations.

This is an antitrust action for injunctive relief and damages based upon sections 1 and 2 of the Sherman Anti–Trust Act ("the Act"), 15 U.S.C. §§ 1–2, and pendent state law claims. The plaintiffs are: two nurse midwives, Susan Sizemore and Victoria Henderson; their business partnership, Nurse Midwifery Associates ("NMA"); their physician associate, Dr. Darrell Martin; and several NMA clients. The defendants are: Vanderbilt Hospital ("Vander-

bilt"); Hendersonville Community Hospital ("HCH"); Dr. Conrad Shackleford, a member of the pediatric staff at HCH; Southern Hills Hospital ("SHH"); Drs. Stephen Melkin, Harry Baer, and George Andrews, members of the obstetrics staff at SHH; State Volunteer Mutual Insurance Company ("SVMIC"); and Dr. B.K. Hibbett, a member of the obstetrics staff at Baptist Hospital in Nashville, and also a member of the SVMIC board of directors. Broadly stated, plaintiffs claim that the defendant doctors, hospitals, and insurance company engaged in various contracts, combinations and conspiracies that unreasonably restrained trade in violation of section 1 of the Act, and attempted to monopolize trade in violation of section 2 of the Act. Plaintiffs allege that defendants intended to prevent NMA from operating a private practice to provide nurse midwifery services at hospitals in Davidson County and Hendersonville, Tennessee, thus putting NMA out of business.

Having reviewed the record, including the Report and Recommendation, the objections thereto, and the responses to those objections, the Court ADOPTS the Magistrate's extensive findings of fact and incorporates them into this Memorandum.

To survive a summary judgment motion in an antitrust case, a plaintiff "must establish that there is a genuine issue of material fact" as to whether the defendants "entered into an illegal conspiracy that caused [the plaintiffs] to suffer a cognizable injury." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (citing, *inter alia*, Fed.R.Civ.P. 56(e)). With this standard in mind, the Court now considers the Magistrate's recommendation as to each allegation and makes a *de novo* determination of recommendations to which objections have been filed.

1. *Conspiracy Among Vanderbilt and Members of its Medical Faculty*

Based on the facts set out in the Report and Recommendation, plaintiffs allege that Vanderbilt should be held liable for conspiring with members of its medical faculty to

deny plaintiff nurse midwives medical staff privileges at that hospital. The Magistrate recommended that all allegations of conspiracy among Vanderbilt and any members of its full-time faculty be dismissed. For the reasons stated below, the Court ADOPTS the Magistrate's recommendation and reasoning as to this claim.

◼ Section 1 of the Act prohibits all contracts, combinations, or conspiracies in restraint of trade. Section 2 of the Act prohibits all combinations or conspiracies to monopolize. Because these activities cannot be performed by a single person acting alone, it is well established that two or more persons are necessary to perform an actionable contract, combination, or conspiracy under the Act. *See, e.g.,* 2 Kintner, *Federal Antitrust Law* § 9.7 (1980). It is also well established that unilateral action, no matter what its motivation, does not violate the Act. *See Monsanto Co. v. Spray–Rite Service Corp.,* 465 U.S. 752, 761, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984); *United States v. Colgate & Co.,* 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919).

◼ A corporation cannot combine or conspire with itself, and the acts of a corporation alone, acting through its directors, officers, and employees, generally are not cognizable under the Act. *See Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 769, 104 S.Ct. 2731, 2740, 81 L.Ed. 2d 628 (1984). If this were not the rule, every decision of a corporation on pricing, marketing, and customer relations would be the result of a conspiracy actionable under the Act.

In *Weiss v. York Hospital,* 745 F.2d 786, 816–17 (3d Cir.1984), *cert denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985), the Third Circuit held that a medical staff of a hospital cannot conspire with the hospital. The Court stated:

Finally, we deal with the plaintiff's assertion that the district court erred in charging the jury that the hospital could not conspire with its medical staff. The district court found that the medical staff was an unincorporated division of the hospital, and as such the court determined that the two could not conspire. Although we do not necessarily agree with the district court's characterization of the medical staff as an unincorporated division of the hospital, we agree with its basic conclusion that, with respect to the issues in this case, the hospital could not, as a matter of law, conspire with the medical staff. The medical staff was empowered to make staff privilege decisions on behalf of the hospital. As such, with regard to these decisions, the medical staff operated as an officer of a corporation would in relation to the corporation. Although the members of the medical staff had independent economic interests in competition with each other, the staff as an entity had no interest in competition with the hospital. Accordingly, we conclude that the district court correctly charged the jury that there could not be a conspiracy between the hospital and the medical staff.

*See also McMorris v. Williamsport Hospital,* 597 F.Supp. 899, 914 (M.D.Pa.1984). Likewise, Vanderbilt argues that plaintiffs' claim must fail because they allege only intra-corporate conspiracy.

Plaintiffs argue in response that *Weiss* states merely that a medical staff cannot conspire with a hospital where the staff has no interest in competition with the hospital. Plaintiffs argue that the individual members of the medical faculty had an "independent personal stake" separate from Vanderbilt's and, thus, could conspire with the hospital. Plaintiffs cite the only known case finding the possibility of an independent personal stake in a hospital privileges case, *Robinson v. Magovern,* 521 F.Supp. 842 (W.D.Pa.1981), *aff'd,* 688 F.2d 824 (3d Cir.), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982). There, the court found that a conspiracy between a hospital and the head of its surgery department would be possible where "the officer, agent or employee has an independent, personal stake in achieving the object of the conspiracy." *Id.* at 907.

The head of the hospital surgery department in *Robinson* also conducted a private surgical practice, which in that court's view

provided an independent personal stake. Plaintiffs argue that, likewise, Vanderbilt's medical staff maintained private practices in addition to their duties at the hospital.

The independent personal stake exception relied upon by plaintiffs has never been adopted by the Sixth Circuit, which has expressed disfavor with the exception in the only two instances in which it has been argued to that court. In *Smith v. Northern Michigan Hospitals*, 703 F.2d 942 (6th Cir.1983), the court found that the individual hospital emergency room staff personnel did not have an independent personal stake separate from the hospital, but that even if they did, "it is doubtful that we would follow the analysis" of the independent personal stake exception. *Id.* at 951 n. 17.

In *Potters Medical Center v. City Hospital Association*, 800 F.2d 568 (6th Cir. 1986), the court went even further in voicing its reluctance to adopt the exception. In *Potters*, plaintiffs alleged that the hospital's staff attorney and its internal medicine department chairman had conspired with each other and with the hospital in violation of the Act. The staff attorney also owned an interest in a construction company that did work for the hospital, and the staff physician also received revenue from the hospital's use of EKG equipment that he owned. The plaintiffs in *Potters* argued that these interests gave these defendants an independent personal stake in harming plaintiffs and in furthering the alleged monopolistic goals of the hospital. The court stated:

> Although several courts have recognized the "independent personal stake" exception to the rule that officers and agents lack capacity to conspire with their corporation, ... this circuit has never endorsed the exception. In fact, this court has noted the "rather substantial policy reasons for not adopting such an exception."

*Id.* at 573 (citing *Smith*, 703 F.2d at 950 n. 15); *see* Note, *"Conspiring Entities" Un-der Section 1 of the Sherman Act*, 95 Harv.L.Rev. 661 (1981–82) (discussing policy considerations bearing on the intra-corporate conspiracy doctrine).

■ Given the clear language in *Potters*, this Court is constrained to agree with the Magistrate that the Sixth Circuit does not intend to recognize the existence of the independent personal stake exception in this circuit. In the absence of that recognition, allegations of intra-corporate conspiracy against Vanderbilt must be dismissed.[1]

■ The Court further agrees with the Magistrate that even if the Sixth Circuit were to recognize this exception, plaintiffs' argument still would fail. As the exception is applied elsewhere, an independent personal stake exists only when an employee of a corporation has an interest in an economic entity that is separate from and unrelated to the corporation by which he is employed, and when that employee stands to benefit from the anti-competitive action taken by the corporate employer. *See, e.g., H & B Equipment Co. v. International Harvester Co.*, 577 F.2d 239, 244 (5th Cir. 1978). A mere potential or indirect motive would be too speculative a basis from which to infer an independent personal stake. *Potters*, 800 F.2d at 573; *Smith*, 703 F.2d at 951. Furthermore, the employee would have to possess the power to institute the anti-competitive policy for his corporation. *Potters*, 800 F.2d at 573; *see also Greenville Publishing Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399–400 (4th Cir.1974).

Under the facts as stated in the Report and Recommendation, the success of the corporate entity, Vanderbilt, depends upon the success of the individual doctors, and vice versa. Because the success of the clinic practice of the individuals is so closely tied to that of Vanderbilt itself, the Court agrees with the Magistrate that any other possible motive would be too speculative to form the basis of an independent personal stake, even if that exception were recognized by the Sixth Circuit. In this

1. This Court's earlier determination to the contrary in *Nurse Midwifery Associates v. B.K. Hibbett*, 549 F.Supp. 1185, 1189–90 (M.D.Tenn. 1982), was rendered before the Sixth Circuit's pronouncements in *Smith* and *Potters*.

regard, the alleged independent personal stake of the physicians at Vanderbilt is similar to those rejected by the courts in *H & B Equipment*, 577 F.2d at 239, and *Wahl v. Rexnord, Inc.*, 481 F.Supp. 573 (D.N.J.1979), *rev'd on other grounds*, 624 F.2d 1169 (3d Cir.1980) (no conspiracy between corporation and its president, who held a patent licensed by the corporation). In addition, the Court further agrees with the Magistrate that Vanderbilt's medical staff by-laws, which required non-physicians applying for the medical staff to be employees of Vanderbilt with faculty appointments in the School of Medicine, were not the cause in fact of plaintiffs' alleged injuries. In any case, the by-laws were, at most, the product of an intra-corporate conspiracy. Accordingly, the Court ADOPTS the recommendation to enter summary judgment for defendant Vanderbilt on this claim, and hereby DISMISSES plaintiffs' allegation of conspiracy among Vanderbilt and any members of its medical staff.

2. *Conspiracy Between HCH and Dr. Shackleford*

■ Plaintiffs allege that defendants HCH and Dr. Shackleford should be held liable for conspiring to deny plaintiff midwives privileges at that hospital. The Magistrate recommended that all allegations of conspiracy between HCH and Dr. Shackleford or any other member of HCH's medical staff be dismissed.

The facts presented indicate, at most, an intra-corporate conspiracy between these defendants. As noted above, the unilateral actions of a corporation acting through its employees generally do not constitute a conspiracy under the Act, *see Copperweld*, 467 U.S. at 752, 104 S.Ct. at 2731; *Weiss*, 745 F.2d at 786, and the Sixth Circuit does not recognize the independent personal stake exception to this general rule, *see Potters*, 800 F.2d at 568. In addition, even if the exception were available, the Court again agrees with the Magistrate that this claim would fail. Although defendant Shackleford's private practice arguably may have given him an independent personal stake in achieving the object of the alleged conspiracy, the facts do not show that he possessed or exercised the power to institute an anti-competitive policy for HCH, a requisite element under the exception where applied. *See, e.g., Potters*, 800 F.2d at 573; *Greenville Publishing*, 496 F.2d at 391. Therefore, the Court hereby ADOPTS the Magistrate's recommendation to enter summary judgment for defendants HCH and Dr. Shackleford on this allegation, and DISMISSES plaintiffs' claim of conspiracy between HCH and Dr. Shackleford or any other member of HCH's medical staff.

3. *Conspiracy Among SHH and Drs. Melkin, Baer, and Andrews*

Plaintiffs allege that defendants SHH, Melkin, Baer, and Andrews should be held liable for conspiring to deny plaintiff nurse midwives privileges at that hospital. The Magistrate recommended that all allegations of conspiracy among SHH and its employees, including Melkin, Baer, and Andrews, be dismissed.

Again, the facts indicate, at most, merely an intra-corporate conspiracy, which is not cognizable under the Act in this circuit. *See Copperweld*, 467 U.S. at 752, 104 S.Ct. at 2731. Even if the private medical practices of the individual defendant doctors arguably gave them an independent personal stake in the object of the alleged conspiracy, this exception is not available to plaintiffs. *Potters*, 800 F.2d at 568. In any case, the claim would fail because the individual defendants did not possess the power to effect an anti-competitive policy at SHH. Therefore, the Court ADOPTS the Magistrate's recommendation to enter summary judgment for defendants SHH and Drs. Melkin, Baer, and Andrews on this claim. Accordingly, the Court DISMISSES plaintiffs' allegations of conspiracy among SHH and Drs. Melkin, Baer, and Andrews, or any other member of SHH's medical staff.

4. *Conspiracy Between SVMIC and Dr. Hibbett*

■ Plaintiffs further allege an illegal conspiracy among principals at SVMIC, a mutual insurance company, and between SVMIC and Dr. Hibbett, to deny plaintiff Dr. Martin's renewal of his medical mal-

practice insurance coverage. The Magistrate recommended that all allegations of conspiracy between SVMIC and Dr. Hibbett, a member of the board of directors of SVMIC, or any other board member, be dismissed, along with all allegations regarding SVMIC's decision not to renew Dr. Martin's insurance in 1980.

The Magistrate reasoned that the acts of SVMIC and Dr. Hibbett were merely intracorporate, and not the products of concerted action under the Act. Although this Court earlier stated that SVMIC may be capable of concerted action because it is owned and operated exclusively by its physician policyholders, *Nurse Midwifery*, 549 F.Supp. at 1190, it is compelled to agree with the Magistrate in light of the nearly contemporaneous opinion in *Arizona v. Maricopa County Medical Society*, 457 U.S. 332, 102 S.Ct. 2466, 73 L.Ed.2d 48 (1982). Discussing "partnerships or other joint arrangements in which persons who would otherwise be competitors pool their capital and share the risks of loss," the Supreme Court stated that "[i]n such joint ventures the partnership is regarded as a single firm competing with other sellers in the market." *Id.* at 356, 102 S.Ct. at 2479. The Court concluded that physicians' joint arrangements to sell insurance, which is a "different product" from the medical services offered by physicians in their individual capacity, are single entities for antitrust analysis. *Id.* Thus, in the instant case, SMVIC must be viewed as a single entity. It follows that actions between SMVIC and Dr. Hibbett, its board member and agent, are not cognizable as a conspiracy under the Act. *See Copperweld*, 467 U.S. at 752, 104 S.Ct. at 2731. Although this Court earlier ruled that a sufficient basis exists for finding an independent personal stake on the part of Dr. Hibbett in having Dr. Martin's malpractice insurance coverage cancelled, *Nurse Midwifery*, 549 F.Supp. at 1190, this fact is irrelevant in light of the Sixth Circuit's refusal to recognize that exception. *See Potters*, 800 F.2d at 568. In addition, the Court agrees with the Magistrate that plaintiffs have failed to show that Dr. Hibbett had the power to institute the decision to cancel the insurance.

■ The Court further agrees with the Magistrate that even if SVMIC's actions had violated the Act, plaintiffs' claim would fail. A private plaintiff may not recover damages simply by proving a violation of the antitrust laws. *Shreve Equipment, Inc. v. Clay Equipment Corp.*, 650 F.2d 101, 105 (6th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 397, 70 L.Ed.2d 213 (1981). Rather, the plaintiff must demonstrate "a causal connection between the antitrust violation and the damages suffered." *Id.; see also Englander Motors, Inc. v. Ford Motor Co.*, 267 F.2d 11, 15 (6th Cir.1959). As the Sixth Circuit has observed, "the causal link must be proved as a matter of fact and with a fair degree of certainty.... To be one of several causes is not enough." *Shreve Equipment*, 650 F.2d at 105 (citations omitted).

The record establishes that despite the cancellation of malpractice insurance by SVMIC, Dr. Martin could have sought coverage from another carrier. Thus, Dr. Martin's alleged injury was caused by his own failure to seek other coverage, not by the cancellation. *See McClure v. Undersea Industries, Inc.*, 671 F.2d 1287 (11th Cir.1982), *cert. denied*, 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 788 (1983) (plaintiff equipment dealer was not injured by alleged boycott by manufacturer, because dealer was able to purchase equipment at comparable cost from other dealers). In addition, the record further establishes that Dr. Martin had decided to leave Tennessee before he had exhausted his appeal of the cancellation. Because the Court agrees that the alleged actions were unilateral, and in any case did not proximately cause plaintiff's alleged injury, it hereby ADOPTS the Magistrate's recommendation to enter summary judgment for defendants SVMIC and Dr. Hibbett on this claim, and DISMISSES plaintiffs' allegations of conspiracy between SVMIC and Dr. Hibbett, or any other board member of SVMIC.

5. *Conspiracy Between Vanderbilt and Dr. Hibbett*

Plaintiffs allege that defendant Vanderbilt conspired with defendant Dr. Hibbett

in July 1980 to deny plaintiff nurse mid-wives allied medical staff privileges at the hospital. The Magistrate recommended that summary judgment be denied on this claim, concluding that sufficient evidence exists to warrant submission of the question of conspiracy to a jury.

Although plaintiffs have presented no direct evidence of this alleged conspiracy, "business behavior is admissible circumstantial evidence from which the fact finder may infer agreement." *Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.*, 346 U.S. 537, 540, 74 S.Ct. 257, 259, 98 L.Ed. 273 (1954). Conspiracy can be established by showing business behavior evidencing "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *American Tobacco Co. v. United States*, 328 U.S. 781, 810, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946); *see also Overseas Motors, Inc. v. Import Motors Ltd.*, 375 F.Supp. 499, 534–35 (E.D.Mich.1974), *aff'd*, 519 F.2d 119 (6th Cir.), *cert. denied*, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975) ("In nearly all cases in which a combination or conspiracy is established through circumstantial evidence, the alleged conspirators have engaged in conduct which is in some sense congruent, compatible, or harmonious.").

On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); *see also Potters*, 800 F.2d at 572. However, as the Supreme Court has stated:

> [A]ntitrust law limits the range of permissible inferences from ambiguous evidence.... Thus, in *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), we held that conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy. *Id.*, at 764, 104 S.Ct., at 1470.... To survive a motion for summary judgment or for a directed verdict, a plaintiff seeking damages ... must present evidence "that tends to exclude the possibility" that the alleged conspirators acted independently. 465 U.S., at 764, 104 S.Ct., at 1471. Respondents ..., in other words, must show that the inference of conspiracy is reasonable in light of the competing inferences of independent action or collusive action that could not have harmed respondents.

*Matsushita*, 475 U.S. at 588, 106 S.Ct. at 1357; *see also Potters*, 800 F.2d at 572.

In the instant case, Vanderbilt may be found liable, under the theory of *respondeat superior* or vicarious liability, for any alleged violations of the Act attributable to actions of any medical staff member in conspiring with Dr. Hibbett. *See American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 565–68, 102 S.Ct. 1935, 1942–43, 72 L.Ed.2d 330 (1982). A conspiracy may be found when one party acquiesces in the anti-competitive demand of another, even if the agreement is obtained through coercion. *See e.g., Albrecht v. Herald Co.*, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968). This appears to be the essence of plaintiffs' claim. Turning to the record in this case, the Court notes that plaintiffs rely upon two types of circumstantial evidence: (1) evidence of an opportunity for Vanderbilt and Dr. Hibbett to conspire, and (2) evidence of a motive on Vanderbilt's part, namely to maintain its advantageous relationships with Baptist Hospital, at which Dr. Hibbett, an opponent of nurse midwifery, was an influential staff member, and with the local OB/GYN community generally, as discussed in the Report and Recommendation. Specifically, Dr. Hibbett allegedly had conversations with Vanderbilt staff members in July 1980 at which they may have conspired regarding denial of plaintiffs' privileges at Vanderbilt. Defendants deny ever having had conversations concerning plaintiffs or the subject of midwifery.

Having reviewed the record in light of the standard enunciated in *Matsushita*, the Court finds that the conduct alleged is as consistent with permissible individual con-

duct as with illegal conspiracy. Because the evidence does not tend to exclude the possibility of independent action, the inference of conspiracy between the defendants is not reasonable in light of the competing inferences.

First, Vanderbilt has asserted that plaintiffs' applications were denied for independent business reasons, namely the promotion of Vanderbilt as a tertiary care center and a high quality medical education and residency training institution. Vanderbilt's explanation that nurse midwifery did not fit readily into this program is both plausible and logical. If the nonmoving party's innocent explanation of the questioned conduct is plausible and more logical than a concerted action theory, summary judgment against the moving party is appropriate. *Kreuzer v. American Academy of Periodontology*, 735 F.2d 1479, 1488 (D.C.Cir.1984).

Second, the federal courts consistently have recognized that "mere contacts and communications, or the mere opportunity to conspire, among antitrust defendants is insufficient evidence from which to infer an anti-competitive conspiracy" to deny hospital privileges. *Cooper v. Forsyth County Hospital Authority, Inc.*, 789 F.2d 278, 281 (4th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 474, 93 L.Ed.2d 418 (1986); *see, e.g., Kaczanowski v. Medical Center Hospital of Vermont*, 612 F.Supp. 688, 695 (D.C.Vt.1985). As the court stated in *Venzie Corp. v. United States Mineral Products Co.*, 521 F.2d 1309, 1313 (3d Cir.1975):

> While the jury was free to disregard the defendants' testimony that no agreement of any kind was formulated during the course of these contacts, mere disbelief could not rise to the level of positive proof of agreement to sustain plaintiffs' burden of proving conspiracy. Furthermore, while proof of contacts between the [defendants] during the crucial summer period may demonstrate the opportunity for formation of a conspiracy, such an opportunity is significant only if other evidence permits an inference that an agreement did in fact exist. Thus, it is necessary to review plaintiffs' other evidence before the importance of the contacts between defendants and the inferences the jury might legitimately draw therefrom may be determined.

Given the independent business motive stated by Vanderbilt, the mere opportunity to conspire during the alleged conversations does not warrant the inference of conspiracy. Moreover, the Court notes that even if the alleged July 1980 conversations between Dr. Hibbett and the Vanderbilt staff members had concerned plaintiffs' applications, the decision to deny the applications, although announced in September 1980, appears to have been made earlier in June 1980, before the alleged conversations would have occurred. *See Vanderbilt's Memorandum in Support, at Exhibit 5.*

For these reasons, the Court DOES NOT ADOPT the Magistrate's recommendation to deny defendants' motion. Accordingly, the Court ENTERS summary judgment for defendants on this claim, and DISMISSES plaintiffs' allegation of conspiracy between these defendants.

6. *Conspiracy between SHH and HCH*

Plaintiffs also allege that a conspiracy between SHH and HCH to deny plaintiff nurse midwives privileges at these hospitals can be inferred from their parallel business activity. The Magistrate recommended that these defendants' motion for summary judgment on this claim be denied because a genuine issue of material fact exists regarding the inference of a conspiracy.

The parties have not cited, and the Court has not found, any Sixth Circuit precedent establishing the requisite elements for proving antitrust conspiracy by circumstantial evidence of parallel business activity. However, under the majority rule, which the Court adopts, the plaintiffs must show that (1) the alleged conspirators' business activities constituted parallel conduct; (2) the alleged conspirators had a motivation to enter into a conspiracy; and (3) the actions taken were contrary to the alleged conspirators' individual economic interests. *See, e.g., Kreuzer v. American Academy of Periodontology*, 735 F.2d

1479, 1488 n. 12 (D.C.Cir.1984); *Venzie Corp. v. United States Mineral Products Co.*, 521 F.2d 1309, 1314 (3d Cir.1975); P. Areeda, *Antitrust Law* ¶ 1434c2 (1986). As noted earlier, these two hospitals may be found liable, under the theory of *respondeat superior* or vicarious liability, for any violations of the Act attributable to the actions of any members of their medical staffs. *See American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 565–68, 102 S.Ct. 1935, 1942–43, 72 L.Ed.2d 330 (1982). Turning to the facts as summarized in the Report and Recommendation, the Court agrees with the Magistrate that sufficient genuine issues of material fact are presented to warrant denial of summary judgment. First, the two hospitals' actions were arguably parallel in that the hospitals were in similar situations and took strikingly similar actions within a short time of each other concerning the applications for privileges. Defendants contend that for such parallel behavior to be cognizable, plaintiffs must show "that the defendants were conscious of each other's conduct and that their awareness was an element in their decisional process." *Schoenkopf v. Brown & Williamson Tobacco Corp.*, 637 F.2d 205, 208 (3rd Cir.1980). The Court concludes that because plaintiffs, in their application to SHH, described the events surrounding their applications at HCH, a sufficient showing has been made as to this element.

Second, plaintiffs have shown motivation to conspire on the part of the hospitals sufficient to survive a summary judgment motion. Plaintiffs' claim is that the hospitals intended to satisfy the objectives of certain members of their respective medical staffs not to allow plaintiffs to compete with local physicians. This contention is supported by evidence, discussed in the Magistrate's Report and Recomendation, of the decisionmaking process at the hospitals in denying the applications, in light of certain doctors' hostility toward midwifery and the hospitals' initial receptiveness to plaintiffs' proposals.

Third, the Court agrees with the Magistrate that the hospitals' actions arguably were against their individual economic interests. As the Magistrate noted, the anticipated yearly number of deliveries attributable to plaintiffs' proposed practice would have increased significantly the hospitals' occupancy rates and, presumably, their revenues. Thus, the Court ADOPTS the Magistrate's recommendation and DENIES summary judgment to defendants SHH and HCH on this claim.

### 7. *Tying by Vanderbilt*

Plaintiffs contend that Vanderbilt engaged in a tying arrangement in violation of the Act by requiring its hospital maternity patients to use physician maternity services. According to plaintiffs, the "tying" product is in-hospital maternity services, and the "tied" product is physicians' services. The relevant geographic market alleged by plaintiffs is Davidson County and Hendersonville, Tennessee. The Magistrate recommended that Vanderbilt's motion for summary judgment on this claim be denied.

■ The elements of a *per se* illegal tying arrangement are: 1) that there are two separate and distinct products; 2) that the seller has sufficient economic power in the tying product market; and 3) that the tying involves a "not insubstantial" amount of commerce. *See, e.g.,* 2 Kintner, *Federal Antitrust Law* § 10.53. Moreover, under the "rule of reason" analysis, another element is added—that the tying arrangement had anti-competitive effects in the marketplace. *See, e.g., Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984). Thus, in order to establish an illegal tying arrangement under either the *per se* or the "rule of reason" analysis, plaintiffs first must establish that Vanderbilt had sufficient market power over in-hospital maternity services in Davidson County and Hendersonville to force patients to accept physicians' services. *See, e.g., Hyde*, 466 U.S. at 13–14, 104 S.Ct. at 1558–1559.

■ Market power may be proven by showing that the firm offers a unique product that competitors are not able to offer. Where market power can be demonstrated by the uniqueness of a particular product,

market dominance is not required. *United States v. Loew's*, 371 U.S. 38, 45, 83 S.Ct. 97, 102, 9 L.Ed.2d 11 (1962).

For antitrust purposes, the tying product's uniqueness is established by determining

whether the seller has the power, within the market for the tying product, ... to require purchasers to accept burdensome terms that could not be exacted in a completely competitive market. In short, the question is whether the seller has some advantage not shared by his competitors in the market for the tying product.

*United States Steel Corp. v. Fortner Enterprises, Inc. (Fortner II)*, 429 U.S. 610, 620, 97 S.Ct. 861, 867–868, 51 L.Ed.2d 80 (1977). The Court continued:

Uniqueness confers economic power only when other competitors are in some way prevented from offering the distinctive product themselves. Such barriers may be legal, as in the case of patented and copyrighted products, ... or physical, as when the product is land.... It is true that the barriers may also be economic, as when competitors are simply unable to produce the distinctive product profitably, but the uniqueness test in such situations is somewhat confusing since the real source of economic power is not the product itself but rather the seller's cost advantage in producing it.

*Id.* at 621, 97 S.Ct. at 868 (quoting *Fortner Enterprises, Inc. v. United States Steel Corp. (Fortner I)*, 394 U.S. 495, 505 n. 2, 89 S.Ct. 1252, 1259 n. 2, 22 L.Ed.2d 495 (1969) (citations omitted)).

Thus, under *Fortner II*, uniqueness only can be established by showing either "(1) a cost advantage on the part of the seller, or (2) a characteristic of the tying product that significantly differentiates it from that which competitors could offer if they so elected. A special advantage must be shown to establish uniqueness and economic power." 2 Kintner, *Federal Antitrust Law* § 10.56.

Plaintiffs argue that, as of the date of the nurse midwives' applications, Vander-

bilt was one of three hospitals in the relevant area that offered a unique obstetrical service, family centered maternity care. The other two hospitals were defendants HCH and SHH. Family centered maternity care requires a particular combination of facility utilization, obstetrical policies, and personnel. Only Vanderbilt, SHH, and HCH offered this particular combination of facilities, policies, and personnel in 1980 in the relevant geographic area. Thus, plaintiffs base their tying theory on the alleged uniqueness of family centered maternity care in this market.

█ However, plaintiffs have made no showing that other competitors were in some way prevented from offering family centered maternity care because of legal, physical, or economic barriers. In short, plaintiffs have shown no cost advantage to Vanderbilt or any characteristic of family centered maternity care that significantly differentiates it from that which competitors could offer if they so elected.

The record shows that two other hospitals, SHH and HCH, both provided this "unique" product. While the record further shows that other hospitals with maternity units in the relevant area did not provide all the components that plaintiffs allege are necessary for family centered maternity care, plaintiffs have not offered any evidence as to why these other hospitals did not. Evidence that other hospitals were prevented from offering this product is critical to plaintiffs' claim. In the absence of proof, it cannot be assumed that these hospitals desired to provide the product but for one reason or another were thwarted from doing so. Hospitals make their own decisions concerning room usage, policies, and personnel. No reason has been presented to believe that the other hospitals in the geographic area could not adopt these policies and, thus, also offer family centered maternity care. Absent such proof, uniqueness has not been established. Plaintiffs, therefore, have failed to present facts to show that Vanderbilt possessed sufficient market power, a requisite element under the theory of illegal tying. For this reason, the Court DOES NOT

ADOPT the Magistrate's recommendation to deny defendant Vanderbilt's motion. Accordingly, the Court ENTERS summary judgment for defendant Vanderbilt on this claim, and DISMISSES this claim from this action.

### 8. *Pendent State Claims*

Because defendants Melkin, Baer, Andrews, and Shackleford were acting, at all relevant times in this action, in their representative capacities as agents of the medical staffs of their respective hospitals, and are thus incapable as a matter of law of conspiring with those hospitals, the Court hereby DISMISSES these individuals from this action. There have been no allegations that these defendants conspired with anyone outside their respective hospitals. In addition, the Court DISMISSES from this action defendants SVMIC, Dr. Hibbett, and Vanderbilt because all federal claims against them have been decided in their favor.

The Court notes that plaintiffs also have alleged in their complaint various state law tort claims by way of the Court's pendent jurisdiction. Although the merits of these claims have not been argued in the motions for summary judgment or addressed in the Magistrate's Report and Recommendation, to the extent that all federal claims are dismissed as to a defendant this Court declines to exercise jurisdiction to hear any pendent state law claims against that defendant, and hereby DISMISSES such claims without prejudice. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Carnegie–Mellon University v. Cohill,* —— U.S. ——, —— – ——, 108 S.Ct. 614, 618–19, 98 L.Ed.2d 720 (1988) ("[w]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction") (citation omitted).

### SUMMARY

Plaintiffs, a professional partnership created to provide nurse midwife services, its principals, an associated physician, and certain clients, brought this action against defendant hospitals, physicians, and insurance company, seeking injunctive relief and damages for alleged violations of sections 1 and 2 of the Sherman Anit–Trust Act. Plaintiffs generally contend that defendants were involved in conspiracies, combinations, and contracts designed to prevent the operation of a private practice to provide nurse midwifery services at hospitals in Davidson County and Hendersonville, Tennessee.

Having reviewed the file and the written objections of all parties to the Magistrate's Report and Recommendation, the Court hereby makes the following *de novo* determinations:

(1) The Court ENTERS summary judgment for defendant Vanderbilt Hospital ("Vanderbilt") as to plaintiffs' allegation of conspiracy among Vanderbilt and any members of its medical staff, and DISMISSES this claim from this action;

(2) The Court ENTERS summary judgment for defendants Hendersonville Community Hospital ("HCH") and Dr. Shackleford as to plaintiffs' allegation of conspiracy between them or any other member of HCH's medical staff, and DISMISSES this claim from this action;

(3) The Court ENTERS summary judgment for defendants Southern Hills Hospital ("SHH") and Drs. Melkin, Baer, and Andrews as to plaintiffs' allegation of conspiracy among them or any other members of the SHH medical staff, and DISMISSES this claim from this action;

(4) The Court ENTERS summary judgment for defendants State Volunteer Mutual Insurance Company ("SVMIC") and Dr. Hibbett as to plaintiffs' allegation of conspiracy between them or any other member of the SVMIC board of directors, and DISMISSES this claim from this action;

(5) The Court ENTERS summary judgment for defendants Vanderbilt and Dr. Hibbett as to plaintiffs' allegation of conspiracy between them, and DISMISSES this claim from this case;

(6) The Court DENIES summary judgment for defendants SHH and HCH as to

**812**

plaintiffs' allegation of conspiracy between them;

(7) The Court ENTERS summary judgment for defendant Vanderbilt as to plaintiffs' allegation of engaging in a tying arrangement, and DISMISSES this claim from this case;

(8) The Court DISMISSES all pendent state claims against defendants Vanderbilt, SVMIC, and Drs. Shackleford, Melkin, Baer, Andrews, and Hibbett, and hereby DISMISSES these defendants from this action;

(9) This action shall proceed to trial on September 12, 1988, on plaintiffs' claim of conspiracy between SHH and HCH, and any pendent state claims alleged against them.

An Order will be entered simultaneously with this Memorandum.